Electronically FILED by Superior Court of California, County of Los Angeles on 04/20/2021 10:43 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Steven Kleifield

Scott C. Glovsky, Bar No. 170477
Email: Sglovsky@scottglovskylaw.com
Steven Messner, Bar No. 259606
Email: Smessner@scottglovskylaw.com
LAW OFFICES OF SCOTT GLOVSKY, APC
343 Harvard Avenue
Claremont, CA 91711
Website: www.scottglovsky.com
Telephone: (626) 243-5598
Facsimile: (866) 243-2243

Attorneys for Plaintiffs

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| LUCIA CORTEZ, individually and as successor and heir of LORENZO CORTEZ, deceased, RACHEL KAUFMAN, individually and as successor and heir of SHLOMO MIZRACHI, deceased.<br><br>Plaintiffs,<br><br>vs.<br><br>PARKWEST REHABILITATION CENTER LLC, a California corporation; CRYSTAL SOLORZANO, an individual, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 21STCV14847<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. NEGLIGENCE/WILLFUL MISCONDUCT<br><br>2. ELDER ABUSE AND NEGLECT (Pursuant to the Elder Adult and Dependent Adult Civil Protection Act – *Welf. & Inst. Code §§ 15600, et seq.*)<br><br>3. WRONGFUL DEATH |

# I.

# INTRODUCTION

1. This is a case about profits over people. Plaintiffs trusted the Parkwest Rehabilitation Center, LLC ("Parkwest") to provide a safe environment for their loved ones. Parkwest grossly betrayed their trust. During the midst of the deadly Coronavirus pandemic, it intentionally concealed when staff members had been exposed to the virus and failed to inform them and keep them safe from exposure. It went as far as to direct staff members who had tested positive, but had yet to exhibit symptoms to continue to work until symptoms did arise.

2. As a result, multiple residents, including Mr. Cortez and Mr. Mizrachi, were infected with the Coronavirus and died as a result of Parkwest's recklessness and negligence. It is likely that many other residents have been infected at the facility, but it is unknown because Parkwest refused to test its residents to create the impression that it has only minimal COVID-19 infections.

3. The recklessness of Parkest and Ms. Solorzano have been widely reported, and state regulators have even stepped in to take action against them. Their conduct is atrocious, and has resulted in the deaths of multiple residents in their care.

4. Lucia Cortez and Rachel Mizrachi bring this action against Parkwest for the deaths of their husband and brother, respectively. Parkwest acted recklessly, maliciously, oppressively, and fraudulently with respect to its entrusted care Mr. Cortez and Mr. Mizrachi. Parkwest took intentional and cruel actions in its reckless response, and lack thereof, to the COVID-19 virus, and those actions resulted in the wrongful death of Mr. Cortez and Mr. Mizrachi.

5. Parkwest sought to avoid scrutiny from local regulators, to save money, and to minimize the knowledge of existence of the virus to the residents and employees until it was too late. As a result, the virus has run rampant through the Parkwest facility infecting residents and employees. Multiple people are dead and more are unfortunately sure to follow.

## II.

## THE PARTIES

6. Decedent Lorenzo Cortez ("Lorenzo) resided, at all times herein mentioned, in Los Angeles County. Lorenzo was living at a Parkwest facility at the time of his death in late 2020.

7. Plaintiff Lucia Cortez ("Lucia") resides, now and at all times herein mentioned, in Los Angeles County. Lorenzo was Lucia's husband.

8. Decedent Shlomo Mizrachi ("Mizrachi") resided, at all times herein mentioned, in Los Angeles County. Mizrachi was living at a Parkwest facility at the time of his death in late 2020. Mizrachi and Lorenzo are collectively referred to herein as "decedents".

9. Plaintiff Rachel Kaufman ("Kaufman") resides, now and at all times herein mentioned, in Los Angeles County. Kaufman was Mizrachi's sister.

10. Defendant Parkwest Rehabilitation Center, LLC ("Parkwest") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of California and authorized to transact and transacting business in the State of California, with its headquarters in the County of Los Angeles. It is the owner and operator of the Parkwest Rehabilitation Medical Center.

11. Defendant Crystal Solorzano is, and at all relevant times was, a resident of the County of Los Angeles.

12. Upon information and belief, Crystal Solorzano is the sole owner of Parkwest. There exists, and at all times mentioned existed, a unity of interest and ownership between Defendants Crystal Solorzano and Parkwest such that any individuality and separateness between them has ceased, and are the alter ego of each other defendant that Parkwest is, and at all times herein mentioned was, a mere shell, instrumentality, and conduit through which defendant Crystal Solorzano carried on the nursing home business. These Defendants intermingle monies and do not respect the corporate formalities necessary to operate as separate entities. As a result, these defendants are collectively referred to herein as "Parkwest."

13. Adherence to the fiction of the separate existence of defendants as entities distinct from each other would permit an abuse of the corporate privilege and would promote injustice by

3

protecting Defendant Crystal Solorzano from prosecution for the wrongful acts committed by her under the name Parkwest.

14. Additionally, Plaintiff is informed and believes that Defendants were in a joint venture to provide nursing home services that are the subject of this lawsuit. They combined their property, skill, and knowledge with the intent to carry out a single business undertaking. Each of the Defendants has an ownership interest in the business and joint control over the business and share the profits and losses of the business.

15. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as Does 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Each of the Defendants named herein as a Doe is responsible in some manner for the events and happenings hereinafter referred to, and some of Plaintiff's damages as herein alleged were proximately caused by such defendants. Plaintiff will seek leave to amend this complaint to show said Defendants' true names and capacities when the same have been ascertained.

16. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as Does 1 through 100, inclusive, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names. Each of the Defendants named herein as a Doe is responsible in some manner for the events and happenings hereinafter referred to, and some of Plaintiffs' damages as herein alleged were proximately caused by such Defendants. Plaintiff will seek leave to amend this complaint to show said Defendants' true names and capacities when the same have been ascertained.

17. At all times mentioned herein, each of the Defendants was the agent or employee of each of the other Defendants, or an independent contractor, or joint venturer, and in doing the things herein alleged, each such Defendant was acting within the purpose and scope of said agency and/or employment and with the permission and consent of each other Defendant.

### III.

### FACTUAL BACKGROUND

18. Up until his death, Lorenzo was a resident of Parkwest's home in Los Angeles

4

County, California.

19. At all times mentioned, Parkwest accepted the responsibility to provide such caretaking and custodial services to decedents.

20. Despite decedents' impairments and need for assistance, they maintained close relationships with plaintiffs. The plaintiffs lost their loved ones as a result of the reckless conduct of defendants.

21. On January 20, 2020, the first case of coronavirus infection in the United States appeared. By March 4, 2020, the virus spread to such an extent and posed such a danger that California's Governor, Gavin Newsom, declared a state of emergency in California. On the same day, the Los Angeles County Board of Supervisors and the Los Angeles County Department of Public Health similarly declared a local and public health emergency in the County of Los Angeles.

22. The elderly and particularly those with underlying health problems are most vulnerable to the coronavirus. In late February, a coronavirus outbreak at a nursing home in Washington infected two-thirds of its residents and killed 37 people. The media widely covered this story. It became quickly apparent that nursing homes needed to promptly take reasonable measures to protect their patients from exposure to the coronavirus.

23. Even months after California and Los Angeles County were declaring a state of emergency, Parkwest recklessly failed to protect those in its care. To the contrary, through April and May of 2020, Parkwest's leadership learned that multiple members of its staff tested or were suspected of having COVID-19 yet did not inform residents or their families and continued to allow the staff to work.

24. Moreover, Parkwest knew, or had reason to know, that in addition to staff members being infected with COVID-19, fellow residents were also infected with COVID-19, but despite knowledge of all the COVID-19 infections throughout the facility, Parkwest recklessly failed to protect its residents, including Mr. Cortez and Mr. Mizrachi, from exposure to this deadly pathogen. Despite its knowledge of rampant exposure to COVID-19, Parkwest did not test any of its residents itself until on or after May 2020.

25. Decedents' deaths were the direct result of Parkwest's reckless, malicious, oppressive, and fraudulent actions and failure to act.

## FIRST CAUSE OF ACTION

### Negligence/Willful Misconduct

### (By Plaintiffs, as successors in interest to decedents, against all Defendants and DOES 1-100)

26. Plaintiffs hereby incorporates the allegations asserted in the paragraphs above as though set forth at length herein.

27. Defendants, and each of them, owed decedents a duty of care as set forth above.

28. Defendants and DOES 1-100 each negligently, recklessly, and intentionally breached their respective duties of care to decedents.

29. At all times mentioned, Defendants and DOES knew that if they did not comply with their respective duties of care to decedents, decedents would likely sustain serious injury or death. Defendants knew that decedents had a risk for serious injury or death if defendants failed to protect its decedents from COVID-19. Defendants further knew that they had a duty to provide care and services to their patients consistent with the requirements of applicable state and federal regulations pertaining to the operation of facilities in the State of California.

30. Notwithstanding such knowledge, including knowledge concerning the probability of injury, Defendants, and each of them, failed to provide appropriate care and supervision as was necessary to meet decedents' needs, and did so recklessly, intentionally, and in conscious disregard of the peril to decedents posed by such failures. Decedents were subjected to "neglect" and "physical abuse" as those terms are defined in *California Welfare & Institutions Code* §§ 15610.57, 15610.63.

31. Defendants' breach of their duties to decedents was the direct, actual, legal and proximate cause of unjustifiable and substantial physical pain, suffering, indignity, severe illness, discomfort, and physical, mental, and emotional harm.

32. As a result of Defendants' breaches, decedents contracted COVID-19 and died.

33. But for each of the Defendants' conduct and breaches of duty, decedents would not have been harmed.

34. The injuries suffered by decedents were foreseeable as Defendants and each of them knew or should have known that their conduct at their facilities in an effort to increase profits would inevitably lead to injuries to residents of the facilities, including the kind suffered by decedents.

35. As a direct and proximate result of the conduct of Defendants as alleged herein, decedents sustained damages in an amount according to proof at trial.

36. The above conduct of Defendants, and each of them, was committed with recklessness and with malice, oppression or fraud, and therefore an award of punitive damages in a sum according to proof is justified and appropriate.

37. Pursuant to the aforementioned relationships, Defendants, and each of them, undertook said employment for compensation, and did agree to provide residential services and to otherwise do all things necessary and proper for decedents' safety and well-being and did thereafter undertake to provide those services.

38. Defendants' conduct described herein was intended by the defendants to cause injury to plaintiff or was despicable conduct carried on by the defendants with a willful and conscious disregard of the rights of Plaintiffs, or subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendants with the intention to deprive Plaintiffs of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of defendants.

39. Defendant's conduct described herein was undertaken by the corporate defendants' officers or managing agents, identified herein as DOES 1 through 100, inclusive, who were responsible for claims supervision and operations, underwriting, communications and/or decisions. The aforementioned conduct of said managing agents and individuals was therefore undertaken on behalf of the corporate defendants. Said corporate defendants further had advance knowledge of the actions and conduct of said individuals whose action and conduct were ratified, authorized, and approved by managing agents whose precise identities are unknown to plaintiff at this time and are therefore identified and designated herein as DOES 1 through 100.

40. During the aforesaid course of services and subsequent thereto, Defendants and each of them, negligently failed to possess and exercise that degree of knowledge and skill ordinarily possessed and exercised by reasonable persons engaged in the business of residential facilities.

41. As a direct and proximate result of the negligence, carelessness and unlawfulness of Defendants, and each of them, plaintiffs suffered damages in a sum to be established according to proof at the time of trial and in excess of the minimal jurisdictional limitations of this court.

## SECOND CAUSE OF ACTION
## Elder Abuse & Neglect
## (By Plaintiffs, as successors in interest to decedents, against all Defendants and DOES 1-100)

42. Plaintiffs hereby incorporates the allegations asserted in paragraphs above as though set forth at length below.

43. At all relevant times, Defendants and DOES 1-100 had the care and custody of decedents and therefore became responsible for meeting the basic needs of the Plaintiff.

44. Defendants and DOES 1-100 each willfully, intentionally, and/or recklessly caused or permitted decedents to be injured and/or to be placed in a situation such that their health was in danger as set forth above.

45. The conduct of Defendants, and DOES 1-100, as alleged herein, created circumstances or conditions likely to produce great bodily harm, and Defendants willfully caused or permitted decedents to suffer, or inflicted upon her, unjustifiable physical pain, injuries, damages, and suffering.

46. The conduct of Defendants and DOES 1-100, as alleged herein, constitutes "neglect" as defined in *Welf. & Inst. Code* § 15610.57.

47. The conduct of Defendants, and DOES 1-100, as alleged herein, constitutes "physical abuse" as defined in *Welf. & Inst. Code* § 15610.63.

48. Defendants' conduct described herein was intended by the defendants to cause injury to plaintiff or was despicable conduct carried on by the defendants with a willful and conscious disregard of the rights of Plaintiffs, or subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendants with the intention to deprive Plaintiffs of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling Plaintiffs to punitive damages in

an amount appropriate to punish or set an example of defendants.

49. Defendant's conduct described herein was undertaken by the corporate defendants' officers or managing agents, identified herein as DOES 1 through 100, inclusive, who were responsible for claims supervision and operations, underwriting, communications and/or decisions. The aforementioned conduct of said managing agents and individuals was therefore undertaken on behalf of the corporate defendants. Said corporate defendants further had advance knowledge of the actions and conduct of said individuals whose action and conduct were ratified, authorized, and approved by managing agents whose precise identities are unknown to plaintiff at this time and are therefore identified and designated herein as DOES 1 through 100.

50. As a direct, actual, legal, and proximate cause of the conduct of Defendants, and DOES 1-100, as alleged herein, decedents suffered unjustifiable and substantial physical pain, suffering, indignity, severe illness, discomfort, and physical, mental, and emotional harm.

51. By engaging in the conduct, neglect and abuse, as alleged herein, including but not limited to the continued and reckless withholding of basic and necessary care and services to decedents such as acting in conscious disregard to the risk for injury and required assistance for activities of daily living at a level that was inadequate to provide necessary care and safety to its residents, including decedents, despite the known risks of such conduct, said Defendants' actions were malicious, oppressive, fraudulent and/or reckless.

### THIRD CAUSE OF ACTION
### Wrongful Death
### (Plaintiffs against all Defendants and DOES 1-100)

52. Plaintiffs incorporates by reference each and every of the foregoing paragraphs as though set forth in full in this cause of action.

53. As a direct and proximate result of the foregoing, decedents wrongfully died and their heirs represented by plaintiffs, has been deprived of their care, comfort and society and all other recoverable wrongful death damages according to proof.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

<u>On the First and Second Causes of Action:</u>

1. For general damages for decedents' pain and suffering in an amount according to proof at trial;
2. For special damages, including medical expenses incurred by or on behalf of decedents, in an amount according to proof at trial;
3. For attorney's fees and costs pursuant to *Welf. & Inst. Code* §15657;
4. For punitive and exemplary damages pursuant to *Civil Code* §3294;
5. For costs of suit; and
6. For such other and further relief as the Court deems just and proper.

<u>On the Third cause of action:</u>

7. For general damages for the loss of care, comfort, and society of resulting from the wrongful death of plaintiffs' husband and brother, respectively;
8. For costs of suit; and
9. For such other and further relief as the Court deems just and proper.

DATED: April 19, 2021                     LAW OFFICES OF SCOTT GLOVSKY, APC

                                          By:   /s/ Scott Glovsky
                                                SCOTT C. GLOVSKY
                                                STEVEN MESSNER
                                                Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a trial by jury.

DATED: April 19, 2021                    LAW OFFICES OF SCOTT GLOVSKY, APC


                                         By:   /s/ Scott Glovsky
                                               SCOTT C. GLOVSKY
                                               STEVEN MESSNER
                                               Attorneys for Plaintiffs