1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
KATHLEEN M. WALKER, SB# 156128
2     Email: Kathleen.Walker@lewisbrisbois.com
633 West 5th Street, Suite 4000
3  Los Angeles, California 90071
Telephone: 213.250.1800
4  Facsimile:  213.250.7900

5  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
LANN G. McINTYRE, SB# 106067
6     Email: Lann.McIntyre@lewisbrisbois.com
RITA R. KANNO, SB# 230679
7     Email: Rita.Kanno@lewisbrisbois.com
550 West C Street, Suite 1700
8  San Diego, California 92101
Telephone: 619.233.1006
9  Facsimile:  619.233.8627

10  Attorneys for Defendants PARKWEST REHABILITATION CENTER LLC and CRYSTAL
SOLÓRZANO

11

12                   UNITED STATES DISTRICT COURT

13                   CENTRAL DISTRICT OF CALIFORNIA

14  LUCIA CORTEZ, individually and as successor      Case No. 2:21-cv-05172-AB-AS
    and heir of LORENZO CORTEZ, deceased,
15  RACHEL KAUFMAN, individually and as          **DEFENDANTS' NOTICE OF MOTION AND**
    successor and heir of SHLOMO MIZRACHI,       **MOTION TO DISMISS PLAINTIFF LUCIA**
16  deceased,                                     **CORTEZ' COMPLAINT; MEMORANDUM OF**
                                                  **POINTS AND AUTHORITIES IN SUPPORT**
17              Plaintiffs,                       **THEREOF**
            vs.
18                                                **[Fed. R. Civ. P. 12(b)(1), (6)]**
    PARKWEST REHABILITATION CENTER,
19  LLC., a California corporation; CRYSTAL       **Date:    August 6, 2021**
    SOLÓRZANO, an individual, and DOES 1 through  **Time:    10:00 a.m.**
20  100, inclusive,                               **Crtrm:   7B**

21              Defendants.

22

23        **TO PLAINTIFFS HEREIN AND PLAINTIFFS' ATTORNEYS OF RECORD:**

24        **PLEASE TAKE NOTICE** that on August 6, 2021, at 10:00 a.m., or as soon

25  thereafter as the matter can be heard, before the Honorable André Birotte Jr., in Courtroom

26  7B, at 350 West First Street, Los Angeles, California, 90012, Defendants PARKWEST

27  REHABILITATION CENTER LLC and CRYSTAL SOLÓRZANO (collectively

28  "Defendants" and/or "Parkwest," "Ms. Solórzano"), will move to dismiss the Complaint

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

brought by Lucia Cortez, individually and as successor and heir of Lorenzo Cortez, deceased, ("Plaintiff") for: 1) Negligence/Willful Misconduct; 2) Elder Abuse and Neglect [Wel. & Instit. Code § 15600 et. seq..]; and 3)Wrongful Death.

As set forth in the accompanying memorandum incorporated by reference herein, Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(b)(1) on the grounds that it is immune from Plaintiff's suit under the Public Readiness and Emergency Preparedness Act ("PREP Act" or "Act"), 42 U.S.C. §§ 247d-6d, 247d-6e. Specifically, the PREP Act's broad immunity protection applies to these Defendants because they are "covered persons" engaged in "recommended activities" for "covered countermeasures" during the COVID-19 global pandemic and national emergency. Plaintiff's Complaint alleges that Defendants did not employ adequate infection control countermeasures, including proper isolation, testing and screening procedures for residents. As such Plaintiff's claims are pre-empted and barred by federal law, and must be dismissed.

*First*, Plaintiff's claims against Defendants should be dismissed because Defendants are "covered persons" that engaged in "recommended activities" regarding the use or administration of "covered countermeasures" and are immune from Plaintiff's claims under the PREP Act. All claims raised in Plaintiff's Complaint, other than those specifically alleging willful misconduct, are completely barred by the immunity provided to Defendants under the PREP Act. Defendants are therefore immune from suit pursuant to the PREP Act.

*Second*, Plaintiff's claims against Defendants should be dismissed because Plaintiff failed to exhaust administrative remedies under the PREP Act, as required, before filling suit. The PREP Act requires Plaintiff to exhaust certain pre-litigation administrative remedies before filing suit. *See* 42 U.S.C. §§ 247d-6d(c)(3), 247d-6e(d)(1), and 247d-6e(a). Here, Plaintiff failed to do so despite that the claim implicates the PREP Act.

*Third*, Plaintiff's claims against Defendants should be dismissed because Plaintiff failed to comply with the procedural requirements for asserting an alleged "willful misconduct" claim under the PREP Act. The PREP Act requires Plaintiff to comply with

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF LUCIA CORTEZ' COMPLAINT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

stringent procedural requirements, including the requirement that claims be pled with particularity and an affidavit from a physician and certified medical documentation be provided, before asserting a "willful misconduct" claim under the PREP Act. *See* 42 U.S.C. § 247d-6d(e). Here, despite the fact that Plaintiff asserts "willful misconduct" claims against Defendants, Plaintiff does not comply with these statutory requirements.

***Fourth***, Plaintiff's claims against Defendants should be dismissed because Plaintiff failed to file the "willful misconduct" claims in the District Court for the District of Columbia as also required by the PREP Act. The PREP Act requires a Plaintiff to file any "willful misconduct" claims in the District Court for the District of Columbia. *See* 42 U.S.C.A. § 247d- 6d(c)(4); § 247d-6d(e)(1) and (5). Because Plaintiff failed to comply with this requirement, Defendants are entitled to dismissal of the Complaint without prejudice–or to a transfer of this matter to the District Court for the District of Columbia— on this basis alone.

***Fifth***, Plaintiff's claims against Defendants should be dismissed because the PREP Act completely preempts Plaintiff's state law claims as confirmed by the Declaration of the Secretary of Health and Human Services ("HHS") (including all amendments thereto) and, the relevant advisory opinions. *See* 42 U.S.C.A. § 247d-6d(b)(8); RFJN–Ex.5 and 9. Accordingly, Defendants are entitled to dismissal of Plaintiff's claims on this basis as well.

***Sixth***, this Court lacks subject matter jurisdiction because the PREP Act's immunity provision preempts all of Plaintiff's state law claims. To the extent an exception is claimed for allegations of willful misconduct, those exceptions must be referred to the United States District Court for the District of Columbia, as explained *supra*. 42 U.S.C. §§ 247d-6d(c)(4): 247d-6d(e)(1), and (5).

Finally, as an independent ground for dismissal, Plaintiff's First, Second, and Third Causes of Action fail to state a claim under California law. Plaintiff's vague allegations amount to nothing more than unsupported conclusions, and Plaintiff fails to state facts

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF LUCIA CORTEZ' COMPLAINT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 sufficient to allege cognizable claims against Defendants, even if they were not preempted
2 and barred by the PREP Act.

3       This motion is based upon this Notice of Motion; the Memorandum of Points and
4 Authorities below; the Request for Judicial Notice; the Declaration of Rita. R. Kanno, and
5 the pleadings and correspondence on file with the Court; oral argument of counsel; and
6 such arguments and authorities as may be presented at or before the hearing[1].

7       Defendants respectfully request a hearing and oral argument in this matter pursuant
8 to Fed. R. Civ. P. 12(i). This motion is made following the conference of counsel pursuant
9 to L.R.7-3, which Defendants commenced relative to Plaintiff's Complaint in writing on
10 June 25, 2021. (Attached to the Declaration of Rita R. Kanno, filed concurrently
11 herewith.)

12 DATED:  July 2. 2021                    LEWIS BRISBOIS BISGAARD & SMITH LLP

13                                  By:   /s/ Rita R. Kanno
14                                        Kathleen M. Walker
                                          Lann G. McIntyre
                                          Rita R. Kanno
15                                        Attorneys for Defendants
16                                        PARKWEST REHABILITATION CENTER LLC and
                                          CRYSTAL SOLORZANO

---

[1] Should this matter proceed on the underlying merits, Defendants reserve the right to
compel arbitration. Because federal jurisdiction is predicated upon the question of whether
the PREP Act applies to Plaintiff's claims, and because that issue is dispositive on
jurisdictional grounds, it would be improper for Defendants to move, in the alternative, to
compel arbitration at present. Defendants do not assert that there is an independent basis
for federal jurisdiction to compel arbitration; rather, the only basis for federal jurisdiction
asserted is under the PREP Act and the Federal Officer Removal statute. Thus, if this
Court determines that the PREP Act is inapplicable, or otherwise remands the matter to
state court for lack of federal question jurisdiction, Defendants reserve the right to move
to compel arbitration in state court.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................... 1

II.   FACTUAL BACKGROUND...................................................................... 4

III.  LEGAL STANDARD .................................................................................. 5

IV.   PLAINTIFF'S CLAIMS ARE BARRED UNDER THE PREP ACT...... 8

   A.   Defendants Are Immune From Suit Under The Prep Act ....................... 8

     1.   Defendants are "Covered Persons" under the Prep Act. ................... 10

       (a)   Defendants  are "Program Planners" under the PREP Act........... 10

       (b)   Defendant are "Qualified Persons" under the Prep Act ............. 11

     2.   Plaintiff's Allegations Involve "Covered Countermeasures".............. 12

     3.   Defendants were engaged in "Recommended Activities".................... 15

   B.   Plaintiff Failed to Comply with the Procedural Requirements for Asserting a "Willful Misconduct" Claim Under the PREP Act. .............................. 18

   C.   Plaintiff's Claims Do Not Fit Within the Limited Exception to PREP Act Immunity ........................................................................................... 18

V.    THE PREP ACT COMPLETELY PREEMPTS PLAINTIFF'S STATE LAW CLAIMS ...................................................................................... 19

VI.   PLAINTIFF'S ELDER ABUSE CAUSE OF ACTION IS INSUFFICIENT AS A MATTER OF LAW.......................................................................... 21

VII.  PLAINTIFF FAILED TO STATE A CAUSE OF ACTION FOR NEGLIGENCE 24

VIII. PLAINTIFF'S CAUSE OF ACTION FOR WRONGFUL DEATH FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ............ 25

IX.   PLAINTIFF FAILED TO PLEAD SUFFICIENT FACTS TO SUPPORT CLAIMS FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES .......... 25

X.    CONCLUSION ........................................................................................ 26

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**FEDERAL CASES**

4

5

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)..........................................................................................6

6

*Bruesewitz v. Wyeth*, LLC
   562 U.S. 223 (2011)........................................................................................20

7

8

*Chambers v. Time Warner, Inc.*
   282 F.3d 147 (2d Cir. 2002) .............................................................................7

9

*Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*
   467 U.S. 837 (1984).................................................................................. 16, 17

10

11

*Daniels-Hall v. National Educ. Ass'n*
   629 F.2d 992 (9th Cir. 2010) ............................................................................7

12

*Garcia v. Welltower OpCo Group LLC*
   No. 8:20-CV-02250, at *8-9 (C.D. Cal. Feb. 10, 2021)............................ 16, 17

13

14

*Grondal v. United States*
   2012 U.S. Dist. LEXIS 19398, at *11-13 (E.D. Wash. Feb. 16, 2012) .................8

15

*In re Amgen Inc. Sec. Litig.*
   544 F. Supp. 2d 1009 (C.D. Cal. 2008) .............................................................7

16

17

*McAfee v. 5th Circuit Judges*
   884 F.2d 221 (5th Cir 1989) .............................................................................8

18

*Moore v. Avery,*
   125 F. App'x 763 (9th Cir. 2005) ......................................................................7

19

20

*Moreno v. Kansas City Steak Company, LLC*
   2017 WL 2985748 (D. Kan. 2017).....................................................................8

21

*Ni v. Royal Bus. Bank of Los Angeles*
   607 F. App'x 720 (9th Cir. 2015) ......................................................................6

22

23

*Parker v. St. Lawrence County Public Health Department*
   102 A.D.3d 140 (N.Y. App. Div. 2012) ...........................................................17

24

*Rachal v. Natchitoches Nursing & Rehab Center LLC*
   Civil Docket No. 1:21-CV-00334 (W.D. La. April 30, 2021) .............6, 10, 16, 17

25

26

*Roth v. Jennings*
   489 F.3d 499 (2d Cir. 2007) .............................................................................7

27

*Sams v. Yahoo! Inc.*
   713 F.3d 1175 (9th Cir. 2013) ..........................................................................7

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Serrano v. Francis*
  345 F.3d 1071 (9th Cir. 2003) ............................................................. 7

*Simmons v. Galvin*
  575 F.3d 24 (1st Cir. 2009) ................................................................. 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007) ............................................................................ 7

*Wright v. Louisiana Corrugated Prods., LLC*
  59 F. Supp.3d 767 (W.D. La. 2014) ................................................... 20

**STATE CASES**

*Bushling v. Fremont Medical Center*
  117 Cal. App. 4th 493 (2004) ............................................................ 24

*Carter v. Prime Healthcare Paradise Valley, LLC.*
  198 Cal. App. 4th 396 (2011) ............................................................ 22

*Covenant Care, Inc. v. Superior Court*
  32 Cal. 4th 771 (2004) ....................................................... 21, 22, 23

*Delaney v. Baker*
  20 Cal. 4th 23 (1999) ................................................................ 22, 23

*Mack v. Soung*
  80 Cal. App. 4th 966 (2000) ............................................................. 22

*Nogart v. Upjohn Co.*
  21 Cal. 4th 383 (1999) ...................................................................... 25

**FEDERAL STATUTES**

28 U.S.C. § 1331 ...................................................................................... 5
28 U.S.C. § 1442 ...................................................................................... 5
42 U.S.C. § 247d-6d (c)(3) ..................................................................... 19
42 U.S.C. § 247d-6d(a)((b) ....................................................................... 8
42 U.S.C. § 247d-6d(a)(1) ........................................................................ 8
42 U.S.C. § 247d-6d(a)(2)(A) ................................................................... 9
42 U.S.C. § 247d-6d(a)(2)(B) ................................................................... 9
42 U.S.C. § 247d-6d(a)(3) ....................................................................... 15
42 U.S.C. § 247d-6d(b)(1) ........................................................................ 8
42 U.S.C. § 247d-6d(c)(1) .................................................................. 3, 19
42 U.S.C. § 247d-6d(c)(3) ........................................................................ 3
42 U.S.C. § 247d-6d(c)(4) ........................................................................ 3
42 U.S.C. § 247d-6d(d) ............................................................................ 3
42 U.S.C. § 247d-6d(d)(1) ...................................................................... 18
42 U.S.C. § 247d-6d(e)(1) .................................................................. 3, 18
42 U.S.C. § 247d-6d(e)(5) ........................................................................ 3
42 U.S.C. § 247d-6d(i)(1) ....................................................................... 13
42 U.S.C. § 247d-6d(i)(2)(B) .................................................................. 10
42 U.S.C. § 247d-6d(i)(2)(B)(v) .............................................................. 11
*42 U.S.C. § 247d-6d(i)(6)* ..................................................................... 10
42 U.S.C. § 247d-6d(i)(8) ....................................................................... 11

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

2

## STATE STATUTES

Cal. Civ. Code § 3294(b) ........................................................................24
Cal. Civ. Code § 377.24 ..........................................................................24
Cal. Welf. & Inst. Code § 15657 ........................................................21, 25
Cal. Welf. & Inst. Code § 15610.57 ......................................................21
Cal. Welf. & Inst. Code § 15657(c) .......................................................24

3

4

5

6

## FEDERAL REGULATIONS

85 Fed. Reg. 15198 ............................................................................8, 9
85 Fed. Reg. 15200 ...............................................................................15
85 Fed. Reg. 15201 ............................................................................9, 15
85 Fed. Reg. 15202 ...........................................................................10, 13
85 Fed. Reg. 21012-02 ...........................................................................9

7

8

9

10

## STATE REGULATIONS

Cal. Code Regs. Tit. 22, § 87101(u)(1) ...................................................11

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Case No. 2:21-cv-05172-AB-AS

**TABLE OF AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

From the onset of the novel coronavirus, healthcare providers, including long term care facilities, have been on the frontlines working diligently to respond to this unprecedented global pandemic. The coronavirus left many skilled nursing facilities in unchartered territory forcing federal, state and local officials to work tirelessly with these facilities to implement infection control policies to stop the spread. During the events at issue in this complaint, there was no therapeutic treatment or vaccine available. Instead, the government issued ever evolving guidelines and recommendations which frequently contradicted their prior guidelines. However, facilities like Parkwest continued to implement infection control policies and countermeasures to protect its residents from contracting COVID-19. Despite these efforts, Lorenzo Cortez ("Decedent" or "Mr. Cortez"), a resident of Parkwest, contracted COVID-19 and subsequently passed away. Mr. Cortez' contraction of COVID-19 is an example of how COVID-19 challenges our skilled nursing facilities and reinforces the need for legal immunities so healthcare providers such as Parkwest are not subject to lawsuits which tax their time and energy, when such resources should be directed toward patient care. This Court can and should now decide, as a matter of federal law, that Parkwest is immune from liability in this case.

On April 20, 2021, Plaintiff filed this action against Parkwest alleging Negligence/Willful Misconduct, Elder Abuse and Neglect (Welf. & Inst. Code, § 15600, et seq.), and Wrongful Death. Plaintiff's Complaint alleges that due to the wrongful acts and omissions of Parkwest, Mr. Cortez contracted the novel coronavirus which caused him substantial pain and suffering and ultimately led to his death. Plaintiffs also seek "enhanced remedies" under the Elder Abuse/Neglect cause of action based on the alleged willful misconduct of Defendants. (RFJN–Ex.1.)

Plaintiff contends that Mr. Cortez's contraction of COVID-19 was caused by the manner in which Defendants used, administered and allocated COVID-19

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

countermeasures as part of their infection control program, including their isolation, testing and screening procedures. (*See*, RFJN, Ex.1-Complaint, pg. ¶ 22, 23, 24, 29.) Specifically, Plaintiff raise issues with regard to the manner in which Parkwest used countermeasures to monitor temperature and otherwise screen staff, residents and visitors at the facility. (*Id.*) Plaintiff therefore contends Defendants' administration of insufficient COVID-19 countermeasures resulted in Mr. Cortez' contraction of the virus and death.

The Court must consider the entire Complaint as pled by Plaintiff. It is the decisions that Defendants made in how they allocated and administered COVID-19 infection control program and these countermeasures that Plaintiff blames for her loss. Plaintiffs cannot allege that Mr. Cortez's death was due to a failure to properly implement an effective infection control program to prevent COVID-19 without implicating covered countermeasures under the PREP Act. The centerpiece of any infection control program used to prevent the spread of the virus includes the use of PPE and COVID-19 testing, as those countermeasures are the main line of defense.

At all relevant times, Parkwest followed instructions issued by the Centers for Disease Control and Prevention ("CDC"), California Department of Public Health ("CDPH"), Centers for Medicare and Medicaid Services ("CMS") and implemented an infection control program that included prioritizing PPE and allocating screening measures and testing. Despite the aggressive efforts of so many institutions in the form of lockdowns, visitation restrictions, revised infection control protocols, over 605,000 people in the United States have died from COVID-19. Thus, the PREP Act was invoked to provide a "whole of nation" approach to fighting COVID-19.

Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(b)(1), on the grounds that it is immune from Plaintiff's suit under the PREP Act, 42 U.S.C. §§ 247d-6d, 247d-6e. The PREP Act's immunity protection applies to Defendants because they are "covered persons" engaged in "recommended activities" involving "covered countermeasures" during the COVID-19 global pandemic and national emergency, as those terms are defined in the Act. Plaintiff's state law claims of negligence, elder abuse,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

and wrongful death all arise out of Defendants' manner of distribution, allocation, administration, or use of countermeasures to prevent the spread of COVID-19 within Parkwest as well as their activities involving the diagnosis, and treatment of COVID-19. Thus, Plaintiff's claims fit squarely within the scope of immunity under the PREP Act.

The PREP Act provides a limited exception to its immunity protections where defendant has engaged in "acts or omissions" that meet the specified definition of "willful misconduct." 42 U.S.C. § 247d-6d(c)(1)&(d). Plaintiff's Complaint does not fit within this exception as, at most, the Complaint alleges negligent and willful conduct only for enhanced remedies. (RFJN–Ex. 1.) The Complaint includes allegations that "Parkwest acted recklessly, maliciously, oppressively and fraudulently...took intentional and cruel actions in its reckless response…to the COVID-19 virus…" (RFJN–Ex. ¶ 4.) Lone allegations such as this does not bring the Complaint within the purview of a willful misconduct claim under the Act. However, even if this sole unsupported allegation states a claim, which it does not, such a claim could only be maintained after an exhaustion of pre-litigation administrative remedies, and it must be brought in federal court in Washington, D.C. See 42 U.S.C. § 247d-6d(c)(3). Thus, even if Plaintiff had sufficiently alleged willful misconduct, this matter should be dismissed as the claims are not properly before this Court.

Additionally, Plaintiff's claims for Elder Abuse and Neglect, as well as Negligence and Wrongful Death, also fail as the facts pled do not state valid causes of action under California law. In support of these claims, Plaintiff alleges that Defendants failed to comply with a number of state laws and regulations and federal regulations governing skilled nursing facilities. However, Plaintiff fails to plead any facts in support of such allegations and, moreover, fail to set forth facts establishing how any such alleged violations caused or contributed to Mr. Cortez contracting COVID-19.

For these reasons, and as more fully explained herein, Defendant respectfully request that Plaintiff's Complaint be dismissed with prejudice in its entirety.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## II.    FACTUAL BACKGROUND

Mr. Cortez was a resident of Parkwest, a skilled nursing facility licensed by the State of California. (*See*, RFJN, Ex.1- ¶ 6-10.) During his residency, the COVID-19 pandemic was declared a worldwide pandemic with public emergencies declared by the federal government and State of California.

On January 31, 2020, HHS Secretary declared that a nationwide public health emergency existed nationwide as of January 27, 2020 due to the 2019 Novel Coronavirus.[2] On March 4, 2020, California Governor Gavin Newsom issued a Proclamation declaring a state of emergency in California due to COVID-19[3]. On March 11, 2020, the World Health Organization ("WHO") first declared that COVID-19 could be characterized as a global pandemic.[4] On March 13, 2020, President Trump declared a nationwide emergency pursuant to the Stafford Act.[5] On March 15, 2020, in an effort to address shortages in staffing, Governor Newsom authorized healthcare workers who were asymptomatic to continue to work.[6]

In addition, beginning in January 2020, federal and state public health authorities began issuing directives to healthcare facilities as part of the nation's critical infrastructure and as part of a coordinated national effort to respond to and contain the COVID-19 pandemic. (*See* RFJN Exs. 11-29.) CDPH surveyors, contracted by the CMS, were supervising facilities including Parkwest with respect to all aspects of infection control and the pandemic response and ensuring compliance with CMS directives. (*See* https://data.chhs.ca.gov/dataset/licensing-and-certification-district-offices-california)

[2] https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx
[3] https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf
[4] https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020
[5] https://trumpwhitehouse.archives.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/
[5] https://www.gov.ca.gov/wpcontent/uploads/2020/03/3.15.2020-COVID-19 Facilities.pdf
[6] https://www.gov.ca.gov/wpcontent/uploads/2020/03/3.15.2020-COVID-19 Facilities.pdf

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

In the Complaint, Plaintiff allege, *inter alia*, that Parkwest: "***failed to protect its residents***, including Mr. Cortez and Mr. Mizrachi, ***from exposure to this deadly pathogen***. Despite its knowledge of rampant exposure to COVID-19, Parkwest did not ***test*** any of its residents itself until on or after May 2020…***failed to protect*** those in its care" by failing to implement appropriate infection control protocols.  (RFJN, Ex.1, ¶ 22, 23, 24, 29.) [Emphasis added.] These claims relate to the administration or use of covered countermeasures to prevent and/or mitigate the spread of COVID-19 at Parkwest, bringing Plaintiff's Complaint squarely within the scope of immunity under the PREP Act.

## III.   LEGAL STANDARD

On June 25, 2021, Defendants properly removed this action on the basis of federal officer jurisdiction, 28 U.S.C. § 1442, and federal question jurisdiction, 28 U.S.C. § 1331. In particular Defendants appropriately points out this matter is completely preempted under the PREP Act. Indeed, as recently as April 30, 2021, the Western District of Louisiana agreed, ruling as follows:

> For the reasons that follow, **the Court finds that the PREP Act is a complete preemption statute, thus creating a federal cause of action as specified therein**.

> To establish complete preemption for purposes of federal question jurisdiction, Fifth Circuit jurisprudence requires that a defendant must show: (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be exclusive. *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 544 (5th Cir. 2005). **The PREP Act contains each of these elements as to claims falling within its scope**. To illustrate this point, it is instructive to compare the principal components of the PREP Act and the Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA") passed in the wake of the September 11, 2001, terrorist attacks, which the Second Circuit held was a complete preemption statute. Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified at 49 U.S.C. § 40101); *In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005). Instrumental to the Second Circuit's analysis was the ATSSSA's statutory components, which consist of: (i) the creation of a Victim Compensation Fund to provide relief, without litigation, to individuals (or relatives of deceased individuals) physically injured or killed as a result of the September 11 attacks; (ii) immunity to the airlines; (iii) a federal cause of action as the exclusive judicial remedy for damages arising out of the attacks; and (iv)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

5                                                        Case No. 2:21-cv-05172-AB-AS
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

1
2
3
4
5
6
7

an exclusive venue in the United States District Court for the Southern District of New York for all suits brought on that federal cause of action. *In re WTC Disaster Site*, 414 F.3d at 373. Significantly, the composition of the PREP Act is very similar in that it: (i) creates a Covered Countermeasure Process Fund to provide relief, without litigation, to eligible individuals for "covered injuries" directly caused by the administration or use of a "covered countermeasure;" (ii) provides immunity to "covered persons," except in the case of "willful misconduct;" (iii) creates an exclusive federal cause of action for damages against a covered person for willful misconduct; and (iv) provides that the federal court in the District of Columbia is the exclusive federal venue for suits on the federal cause of action. 42 U.S.C. § 247d-6(d); 42 U.S.C. § 247d-6(e).

8
9
10
11
12
13
14

Further, the PREP Act states that the remedy available in the Covered Countermeasure Process Fund "shall be exclusive of any other civil action or proceeding for any claim or suit this section encompasses," with the exception of the federal cause of action for damages against a "covered person" for willful misconduct. *Id*. § 247d-6(d). **The Court concludes that, together, these provisions demonstrate Congress's intent that the PREP Act exclusively encompass "claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure."** *Id*. § 247d-6d(a)(1). Accordingly, to the extent Plaintiff's alleged loss was caused by a "covered person" and arose out of, related to, or resulted from the administration to or the use by an individual of a "covered countermeasure," **This Court has federal question jurisdiction to apply the provisions of the PREP Act**.

15
16
17

*See Rachal v. Natchitoches Nursing & Rehab Center LLC*, Civil Docket No. 1:21-CV-00334 (W.D. La. April 30, 2021), Memorandum Ruling, April 30, 2021, fn. 3. [emphasis added].

18
19
20
21
22
23
24
25
26
27
28

Now, Defendants move this Court to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, and alternatively under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully" and more than labels, conclusions, "formulaic recitation of the elements," or "naked assertions." *Id*. Legal conclusions and mixed questions of law and fact do not receive the presumption of truth even at the pleading stage. *See id*.; *Ni v. Royal Bus. Bank of Los Angeles*, 607 F. App'x 720 (9th Cir. 2015).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Questions of statutory interpretation "are questions of law ripe for resolution at the pleadings stage." *Simmons v. Galvin*, 575 F.3d 24, 30 (1st Cir. 2009). Further, "the assertion of an affirmative defense may be considered properly on a motion to dismiss where the allegations in the complaint suffice to establish the defense." *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). This includes where there is a challenge on qualified immunity grounds. See, e.g., *Serrano v. Francis*, 345 F.3d 1071, 1081 (9th Cir. 2003). Dismissal under this standard is also appropriate where there is a failure to exhaust administrative remedies, see, e.g., *Moore v. Avery*, 125 F. App'x 763, 764 (9th Cir. 2005), and when a complaint does not meet heightened pleading requirements imposed by statute. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 327-28 (2007).

Finally, in determining the sufficiency of a claim under Rule 12(b)(6), the Court may consider not only the allegations on the face of a pleading, but also "[d]ocuments that are attached to the complaint or incorporated in it by reference" which are deemed part of the pleading." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). In addition to documents referenced in the complaint, courts may also consider documents that a plaintiff relied on in bringing suit, which are either in the plaintiff's possession or that the plaintiff knew of and relied on when bringing suit. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). Courts have held that a plaintiff's medical records are therefore properly considered by a court in determining a Rule 12(b)(1) or 12(b)(6) motion where they are integral to the complaint and there is no dispute regarding the records' authenticity. And when deciding a motion to dismiss under Rule 12(b)(6), a court may consider "matters of public record and facts susceptible to judicial notice." *Daniels-Hall v. National Educ. Ass'n*, 629 F.2d 992, 998 (9th Cir. 2010) (taking notice of information made publicly available by government entities and information contained within the complaint); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023 (C.D. Cal. 2008) (taking notice of information on FDA website).

Also Fed. R. Civ. P. 12(b)(1) provides for dismissal of an action for "lack of subject matter jurisdiction." *See* Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion can challenge

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

the sufficiency of the pleadings to establish jurisdiction (facial attack), or a lack of any factual support for subject matter jurisdiction despite the pleading's sufficiency (factual attack). *See Grondal v. United States*, 2012 U.S. Dist. LEXIS 19398, at *11-13 (E.D. Wash. Feb. 16, 2012) (Quackenbush, J.); *See McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222-23 (5th Cir 1989); *Johnson v. United States*, 502 Fed. Appx 412, 420 (5th Cir 2012); *Moreno v. Kansas City Steak Company, LLC*, 2017 WL 2985748 (D. Kan. 2017).

## IV.   PLAINTIFF'S CLAIMS ARE BARRED UNDER THE PREP ACT

### A.   Defendants Are Immune From Suit Under The Prep Act

Defendants are immune under the PREP Act, as well the implementing Declaration under the PREP Act for Medical Countermeasures against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020), and its various amendments–including the Fourth Amendment dated December 3, 2020 (RFJN, Exs. 2-5) ("the Declaration"). The intent of the PREP Act is to remove liability concerns–specifically for covered persons as to countermeasures–so that resources remain available during an emergency; otherwise, such critical resources will simply shut down rather than expose them to endless lawsuits.[7] The PREP Act applies to all of Plaintiff's state law claims, as they center on Defendants' efforts to diagnose, screen, treat, prevent, or mitigate COVID-19.[8]

The Act has a broad reach in its intended scope of protection and empowers the Secretary of HHS to issue a written declaration identifying the "covered persons" who shall be immune from suit and liability under Federal and state law with respect to ***all claims for loss*** caused by, arising out of, relating to, or resulting from the administration or use of a "covered countermeasure" during a health emergency. 42 U.S.C. § 247d-6d(a)(1)&(b). "Loss" is broadly defined as "any type of loss," including death, physical

---

[7] *See* P. Binzer, *The PREP Act: Liability Protection for Medical Countermeasure Development, Distribution, and Administration, Biosecurity and Bioterrorism: Biodefense Strategy, Practice, and Science*, Vol. 6, No 4, 2008.

[8] The Act states that "[a] covered person shall be immune from suit and liability under Federal and State law with respect to claims for loss ***caused by, arising out of, relating to, or resulting from*** the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure." 42 U.S.C. § 247d-6d(b)(1) (emphasis added).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

injury, mental injury, emotional injury, fear, property loss and damage, and business interruption loss. *Id.* 42 U.S.C. § 247d-6d(a)(2)(A). Moreover, the immunity applies to any claim "that has a causal relationship with the administration of or use by an individual of a covered countermeasure." *Id.* 42 U.S.C. § 247d-6d(a)(2)(B).

The Declaration provides liability immunity for "recommended activities," including the distribution, allocation, administration and use of covered countermeasures against COVID 19. *See* 85 Fed. Reg. 15198-15201. The Declaration was amended on April 10, 2020 to reflect newly enacted legislation and the addition of "respiratory protective device[s] approved by NIOSH" to the list of "covered countermeasures." *See* 85 Fed. Reg. 21012-02. A June 8, 2020 Amendment then retroactively included as "covered countermeasures" additional products that "limit the harm such a pandemic or epidemic might otherwise cause." 85 Fed. Reg. 35101. The Office of the General Counsel of HHS also issued an Advisory Opinion on April 17, 2020, stating that "the number of products used for COVID-19 that are approved, licensed or cleared [by the FDA] are too numerous to list." However, the Opinion cites to lists of medical devices that are covered by EUAs. Notably, the lists include various forms of PPE (face shields, gowns, shoe covers, non-surgical isolation gowns, surgical caps, properly labeled non-surgical masks, and certain non-NIOSH approved respirators) and COVID-19 testing kits. *See* Advisory Opinion on the PREP Act and the March 10, 2020 Declaration Under the Act April 17, 2020, as Modified May 19, 2020 (RFJN, Ex. 8). The Declaration was amended again on December 3, 2020 which, *inter alia*, incorporates all Advisory Opinions relating to the PREP Act into the Declaration itself. (RFJN, Ex.5, p. 3). Finally, on January 28, 2021, HHS under the Biden Administration issued a Fifth Amendment to the Declaration, affirming prior amendments, confirming the wide-sweeping breadth of the Act and its

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

complete preemptive effect, and expanding the categories of individuals authorized to administer COVID-19 vaccines. (RFJN, Ex.30).[9]

Together, these authorities provide immunity to an individual or entity under the PREP Act if (1) they are a "covered person"; (2) they are administering or using a "covered countermeasure"; (3) the claim against which immunity is asserted "arises out of, relates to, or results from" the administration or use of the subject countermeasure; (4) the administration or use occurs during "effective period"; and (5) the "covered countermeasure" was obtained through a specified "means of distribution." PREP Act, 42 U.S.C. §§ 247d-6d, 247d-6e. Here, Defendants' activities meet all of these elements.

### 1.    Defendants are "Covered Persons" under the Prep Act.

Plaintiff's own allegations establish that Defendants are "covered persons," as defined by 42 U.S.C. § 247d-6d(i)(2)(B). As more fully explained below, Defendants satisfy the definitions of both a "program planner" and "qualified persons." *See Rachal v. Natchitoches Nursing & Rehab Center LLC*, Civil Docket No. 1:21-CV-00334 (W.D. La. April 30, 2021) (finding senior living communities are "covered persons" under  PREP Act).

#### (a)    Defendants  are "Program Planners" under the PREP Act

The Act defines a "program planner" as a person or entity who:

> [S]upervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with [the Secretary's declaration]. 42 U.S.C. § 247d-6d(i)(6).

Importantly, a "private sector employer or community group or other 'person' can be a program planner when it carries out the described activities." 85 Fed. Reg. 15202.

---

[9]   See sixth amendment to the PREP Act (February 10, 2021): https://www.phe.gov/Preparedness/legal/prepact/Pages/COVID-Amendment-6.aspx; See also seventh amendment to the Prep Act (March 11, 2021): https://www.phe.gov/Preparedness/legal/prepact/Pages/PREP-Act-Guidance.aspx

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

10                                      Case No. 2:21-cv-05172-AB-AS
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

HHS has already concluded that a senior living community is a "program planner" to the extent it performs the above functions. (RFJN, Ex. 2, 6.)

In the context of facilities such as Parkwest, in their role as program planners, Defendants implemented infection control programs against COVID-19 which, as required under California law, necessarily included the administration and distribution of covered countermeasures. *See* Cal. Code Regs. Tit. 22, § 87101(u)(1). Parkwest supervised and administered an infection control program using covered countermeasures, which included symptom screening for all residents and staff, diagnostic testing for COVID-19, the use of approved PPE. (RFJN, Ex.1, ¶ 22, 23, 24, 29.)

### (b)    Defendant are "Qualified Persons" under the Prep Act

Under the PREP Act, a "qualified person who prescribed, administered, or dispensed" the countermeasure at issue is considered a "covered person." The term "qualified person" includes:  (A) a licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the State in which the countermeasure was prescribed, administered, or dispensed; or (B) a person within a category of persons so identified in a declaration by the Secretary. 42 U.S.C. § 247d-6d(i)(8).[10] Again, HHS has confirmed that a senior living community may be a "qualified person" where it was authorized in accordance with the public health and medical response of the Authority Having Jurisdiction to, *inter alia*, prescribe or administer a Covered Countermeasure. (RFJN, Ex.6 ).

Here, Plaintiff alleges Parkwest is a skilled nursing facility licensed by the CDPH authorized to prescribe, administer, covered countermeasures (i.e., PPE including facemasks, gloves, gowns, face shields, N95 masks, and COVID-19 testing) under the State of California. (RFJN, Ex.1, ¶¶ 10, 29.) *See* Cal. Code Regs. Tit. 22, § 87101(u)(1).

---

[10] "[A]n official, agent or employee of a person or entity" that meets the above requirement is included in the definition of a "covered person." 42 U.S.C. § 247d-6d(i)(2)(B)(v).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

11                                                    Case No. 2:21-cv-05172-AB-AS
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

Further, facility staff were among the class of workers directed to continue to work and to take precautions against the spread of COVID-19 as part of the nation's critical infrastructure.[11] Therefore, Parkwest and its employees are "qualified persons" for purposes of PREP Act immunity as well.

### 2.   Plaintiff's Allegations Involve "Covered Countermeasures"

Immunity under the PREP Act "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the . . . distribution . . . purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure." 42 USC § 247d-6d (a)(2)(B).

In his initial Declaration, the HHS Secretary noted that the "PREP Act does not explicitly define the term 'administration' but does assign the Secretary the responsibility to provide relevant conditions in the Declaration." In Section IX of the Declaration, the Secretary defines "administration of a covered countermeasure" as the "physical provision of the countermeasures to recipients *or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients; management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures*." [Emphasis added.] (RFJN Ex. 2.)

Accordingly, the broad definition of "Administration" of covered countermeasures encompasses not only Defendants' affirmative use of countermeasures at the facility but also Defendants' plans and decisions with respect to how best to utilize and optimize supplies of PPE and COVID-19 testing kits, and whether and when the use of such countermeasures is appropriate as part of its infection control efforts. It protects *omissions* by covered persons, including those that may be caused by constantly changing

---

[11] https://www.gov.ca.gov/wp-content/uploads/2020/03/3.15.2020-COVID-19-Facilities.pdf

Case No. 2:21-cv-05172-AB-AS

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

governmental directives, shortages and delays in countermeasure deployment. The Fourth Amendment to the Declaration confirms this:

> Where there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute "relating to . . . the administration to . . . an individual" under 42 U.S.C. 247d-6d . . . . [such as] when [t]he person in the vulnerable population was able to receive the vaccine only because it was not administered to the person in the less-vulnerable population. ***Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections***."(RFJN, Ex. 5, (Fourth Amendment) pp. 24-25) (emphasis added).

Here, the Complaint specifically asserts allegations relating to the way Parkwest employed CDC guidelines to protect and treat residents and patients against infection from COVID-19, for failing to take all reasonable and necessary precautions to ensure decedent did not contract COVID-19 (in other words, Plaintiff seeks to hold Defendants liable for its decisions directly relating to the delivery, distribution, and dispensing of countermeasures to combat COVID-19), for failing to properly test residents for COVID-19 and for improperly distributing, administering and utilizing other equipment and supplies which are designated countermeasures to combat the COVID-19 outbreak, including but not limited to items identified as PPE. (RFJN, Ex.1-¶ 22, 23, 24, 29.) Thus, the Complaint contains allegations relating to covered countermeasures, bringing this case within the preemptive and immunity provisions of the PREP Act.

Plaintiff's allegations in the Complaint also concede that Defendants indeed utilized diagnostic testing for COVID-19 at Parkwest. (RFJN, Ex.1 ¶ 24.) The Declaration identifies "any . . . diagnostic, any other device, or any vaccine, used to treat diagnose, cure, prevent, or mitigate COVID-19 . . . ." provided such countermeasure fits into at least one of the categories set forth under the PREP Act. 42 U.S.C. § 247d-6d(i)(1); 85 Fed. Reg. 15202 (emphasis added). To date, a very large number of diagnostic tests for use in detecting or preventing the spread of COVID-19 have been approved, licensed, or cleared by the FDA, or subject to an EUA. The use (as well as the allegedly negligent use) of diagnostic testing constitutes a covered countermeasure and,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

13

Case No. 2:21-cv-05172-AB-AS

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

in this matter, it is expressly alleged that such covered countermeasure was administered by Defendants to the staff and residents of Parkwest.

Plaintiffs further allege that Parkwest caused Mr. Cortez's death from COVID19 insofar as it: "*failed to protect its residents*, including Mr. Cortez and Mr. Mizrachi, *from exposure to this deadly pathogen*. Despite its knowledge of rampant exposure to COVID-19, Parkwest did not *test* any of its residents itself until on or after May 2020*…failed to protect* those in its care" by failing to implement appropriate infection control protocols. (RFJN, Ex.1, ¶ 22, 23, 24, 29.) [Emphasis added.] Such claims include additional infection control measures such as resident monitoring for COVID-19, social distancing, visitor and employee screening, cohorting and isolation of residents, hand sanitization and cleaning and disinfecting of the premises. These activities likewise fall within the PREP Act's immunity provisions as such claims relate to the management and operation of Defendants' countermeasures (i.e., infection control) program and their management and operation of the facility for purposes of distributing and dispensing those countermeasures.

Furthermore, during the time frame relevant to Plaintiffs' complaint, the CDC, CMS and CDPH had all issued directives pertaining to the preservation of PPE and had instructed facilities to test only symptomatic patients. (*See* RFJN, Exs. "11", "12", "13", "17", "21", "22", "23" and "26".) Defendants were subject to the instruction and directives issued by these government agencies and was following this applicable public health guidance with respect to the use of PPE and COVID-19 testing. Defendants have thus established that they have immunity under the PREP Act as it relates to Plaintiff's claims relating to deficiencies in its manner of use and administration of PPE, COVID-19 testing and other countermeasures

While Plaintiff will argue these claims do not fall within the PREP Act, such claims by their very nature indeed relate to the use of covered countermeasures, including PPE, and COVID-19 testing, and/or the management and operation of Parkwest's countermeasures program, for which Defendants have immunity under the PREP Act.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Plaintiff cannot allege Mr. Cortez' death was due to inconsistently or improperly implementing effective infection control policies to prevent COVID-19 without implicating the countermeasures that comprise those policies, since such countermeasures are the main line of defense against and the centerpiece of any infection control program used to prevent the spread of the virus that causes COVID-19.

Thus, Parkwest's infection control protocols trigger PREP Act immunity because the facility used and continues to use qualified countermeasures under the PREP Act to achieve compliance with federal, state, and local laws.

### 3. Defendants were engaged in "Recommended Activities"

Defendants were involved in "recommended activities," defined as the manufacture, testing, development, distribution, *administration and use* of one or more "covered countermeasures." *See* 85 Fed. Reg. at 15201. These include any activity that is part of an authorized emergency response at any level of government. And these activities can be authorized through guidance, requests for assistance, agreements, or other arrangements, and are covered under the PREP Act even if a state or local authority has not declared a state of emergency. *See id*.

Here, the covered countermeasures were administered or used within the effective period of the Declaration and for the categories of diseases, health conditions, or threats to health contemplated by the Declaration. *See* 42 U.S.C. § 247d-6d(a)(3). The Declaration defines "Administration of a Covered Countermeasure" as the physical provision of countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients; management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures. *See* 85 Fed. Reg. 15200. The definition of administration extends to the provision of a countermeasure to a recipient *and* also includes activities related to management and operation of programs and locations for providing countermeasures to recipients. *See*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   *id.*[12] And Advisory Opinion 21-01, issued on January 8, 2021, which states that the

2   application of PREP Act immunity includes situations involving a conscious decision by

3   a program planner, such as Defendants, not to use a covered countermeasure, and must

4   be given *Chevron* deference as it has been expressly incorporated into the Fourth

5   Amendment. (RFJN–Ex. 9.) Here, Plaintiff alleges the administration and use of testing,

6   screening and other countermeasures to residents and staff at Parkwest. (*See generally*

7   Complaint). Even "monitoring" a patient who has been exposed to COVID-19 may be

8   considered a "recommended activity" as it is part of the management of an infection

9   control protocol implemented in response to the virus.

10        Indeed, two months ago, the District Court for the Western District of Louisiana

11   in *Rachal* concluded that "HHS's interpretation of the PREP Act and its scope [including

12   as set forth in the advisory opinions] is reasonable" and, moreover, warrants deference

13   given: "(i) the PREP Act's broad grant of authority to the HHS Secretary; (ii) the

14   Secretary's express incorporation of the OGC's Advisory Opinions into the Declarations

15   for purposes of construing the PREP Act; (iii) the complexity of the relevant statutory

16   provisions; (iv) the technical nature of the subject matter; and (v) the need for uniformity

17   in the judiciary's interpretation of the PREP Act across the United States."

18        Moreover, a California District Court addressed the PREP Act in a decision that

19   fully supports Defendants' position here. In *Garcia v. Welltower OpCo Group LLC,* No.

20   8:20-CV-02250, at *8-9 (C.D. Cal. Feb. 10, 2021), Judge James V. Selna  dismissed a

21   complaint nearly identical to Plaintiff's on the grounds that the PREP Act preempted

22   Plaintiff's state law claims and granted immunity to Defendants. The Court noted other

23   district court decisions that found the PREP Act did not have complete preemptive effect

24

25   _____

26   [12] Where Congress has expressly delegated interpretive authority to an agency, that agency's interpretative proclamations are controlling on the federal courts. See *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-844

27   (1984)(*Chevron*). The HHS Secretary's Fourth Amendment to the PREP Act (Fourth Amendment) clarified that "the Declaration must be construed in accordance with the

28   advisory opinions issued by its Office of the General Counsel on the PREP Act and the Declaration. (RFJN, Ex. 9.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

16                                              Case No. 2:21-cv-05172-AB-AS
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

1  were decided **before** the more recent guidance from HHS Office and denied the motion

2  to remand. (*See* RFJN Ex. "32".) The Court afforded deference to the January 8, 2021

3  Advisory Opinion under the well-established rules in *Chevron USA, Inc. v. Natural*

4  *Resources Defense Council, Inc.*, 467 U.S. 837, 843-844 (1984) ("*Chevron*"), and agreed

5  that the "OGC affirmed the PREP Act is a complete preemption statute and clarified the

6  scope of the Act relative to the ongoing pandemic." (See RFJN Ex. "32", p. 11.)

7        In *Garcia,* Judge Selna also assessed whether Defendant was "covered persons"

8  or "program planners" under the PREP Act and therefore immune from suit. Since

9  Defendant supervised or administered countermeasures (including, but not limited to,

10  supervising or administering infection control programs) to respond to the COVID-19

11  pandemic, the Judge determined that Defendant was "covered persons." (*Id*. at 12.) Judge

12  Selna further explained Plaintiff's injuries arose out of or resulted from the administration

13  or use of a covered countermeasure (Defendant's use or misuse of infection control

14  measures.) (*Id*. at 13.)[13]

15        Plaintiff's allegations in the present matter are virtually the same as the allegations

16  in *Garcia*. As such, the Court should respectfully apply the same reasoning here as in

17  *Garcia* and grant Defendants' Motion to Dismiss pursuant to Federal Rule 12(b)(6)

18  because Defendants are immune from suit.  (*Id*. at 16.)

19        However, to the extent that this Court has any questions as to whether these claims

20  are within the purview of the statute, the Court should follow the approach taken by the

21  *Rachal* Court and direct the parties to engage in a limited period of targeted jurisdictional

22  discovery followed by immediate briefing of the jurisdictional issue.

23

24

25

26

27

28

---

[13] The Court in *Parker v. St. Lawrence County Public Health Department*, 102 A.D.3d 140 (N.Y. App. Div. 2012) reached the same conclusion. The *Parker* Court held that "[c]onsidering the breadth of the preemption clause together with the sweeping language of the statute's immunity provision, we conclude that Congress intended to preempt all state law tort claims arising from the administration of covered countermeasures by a qualified person pursuant to a declaration by the Secretary, including one based upon a defendant's failure to obtain consent." *Id*. at p. 144

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

17

Case No. 2:21-cv-05172-AB-AS
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

### B.   Plaintiff Failed to Comply with the Procedural Requirements for Asserting a "Willful Misconduct" Claim Under the PREP Act.

With regard to Plaintiff's claims of willful misconduct, Plaintiff's allegations also fail to meet the PREP Act's statutorily-imposed heightened pleadings standards which require, among other things, that each element be pled with particularity, including the specific acts or omissions constituting misconduct by each defendant, as well as facts supporting proximate causation with respect to serious physical injury or death. (See 42 U.S.C. § 247d-6d(e)(3)). Rather, Plaintiff's allegations contain labels, conclusions, "formulaic recitation of the elements," and "naked assertions" that do not meet the PREP Act's heightened pleading requirement. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Significantly, Plaintiff also fails to satisfy the special Verification, Certification, and attachment of Medical Records requirements for willful misconduct suits. (*See* 42 U.S.C. § 247d-6d(e)(4)).The PREP Act requires that a plaintiff asserting a "willful misconduct" claim shall verify the complaint and shall file an affidavit from a physician as well as certified medical records documenting the applicable injury or death, inter alia. *Id.* A complaint alleging "willful misconduct" that does not comply with this requirement "shall not be accepted for filing and shall not stop the running of the statute of limitations." (See 42 U.S.C. § 247d-6d(e)(4)(A)). Here, Plaintiff failed to comply with these statutorily-imposed requirements. For this reason alone, Defendants are entitled to dismissal of Plaintiff's purported "willful misconduct" claims.

### C.   Plaintiff's Claims Do Not Fit Within the Limited Exception to PREP Act Immunity

The sole exception to PREP Act immunity (other than actions by and against the United States) is "for an exclusive Federal cause of action against a covered person for death or serious injury proximately caused by "willful misconduct" which must be filed in the United States District Court for the District of Columbia. 42 U.S.C. §§ 247d-6d(d)(1) and (e)(1). "Willful misconduct" under the PREP Act, is defined as "**an act or omission that is taken–(i) intentionally to achieve a wrongful purpose;**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**(ii) knowingly without legal or factual justification; _and_ (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit."** [Emphasis added.] 42 U.S.C. § 247d-6d(c)(1)(A). Plaintiff has the burden of proving by clear and convincing evidence "willful misconduct" by each covered person sued and that such "willful misconduct" proximately caused death or serious injury. 42 U.S.C. § 247d-6d (c)(3). The PREP Act makes clear that before Plaintiff may pursue such action under the "willful misconduct" exception they must first file a pre-litigation administrative claim with the Countermeasures Injury Compensation Program (CIP). (42 U.S.C. § 247d-6e.)

Here, Plaintiff's Complaint does not contain allegations that rise to the level of "willful misconduct" as defined in the PREP Act. The Complaint alleges negligent, and willful, conduct only for enhanced remedies and has mere conclusory allegation that Defendants "willfully/and or recklessly" ignored or otherwise violated the state and federal laws and regulations designed to protect residents like Mr. Cortez from contracting COVID-19. (RFJN–Ex.1, ¶ 4); however, there are no facts in the Complaint supporting an allegation that Defendants' acts or omissions were taken "intentionally to achieve a wrongful purpose"; "knowingly without legal or factual justification" **and** "in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit."

Moreover, even if Plaintiff's Complaint did state such allegations, Plaintiff must first exhaust their pre-litigation administrative remedies, and they must then pursue any such claims in the United States District Court for the District of Columbia, not in this Court. Having failed to do so, Plaintiff's Complaint must be dismissed pursuant to Rules 12(b)(1) and/or 12(b)(6).

## V.   THE PREP ACT COMPLETELY PREEMPTS PLAINTIFF'S STATE LAW CLAIMS

In addition to statutory immunity, dismissal is proper under either Rule 12(b)(1) and/or Rule 12(b)(6) because Plaintiff's state law claims are expressly preempted by the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  PREP Act. The preemptive intent of the PREP Act is clear from its face. At the outset, it

2  expressly provides immunity "from suit and liability under Federal and State law,"

3  which—stemming from an act of Congress—necessarily involves preemption to be

4  effective. Also, it contains an express preemption clause that provides that "[n]o State . .

5  . may establish, enforce, or continue in effect … any provision of law or legal requirement

6  that . . . (A) is different from, or is in conflict with, any requirement applicable under this

7  section; and (B) relates to the . . . use, ... dispensing, or administration by qualified

8  persons of the covered countermeasure." (42 U.S.C.A. § 247d-6d(b)(8)).

9          In *Parker v. St. Lawrence County Public Health Department*, 102 A.D.3d 140,

10  *supra*, the court held that a claim for battery due to the administration of the H1N1

11  vaccine to a child without parental consent was preempted by the PREP Act. See 102

12  A.D.3d 140, 144 (App. Div. 3d. 2012) (citing *Bruesewitz v. Wyeth*, LLC, 562 U.S. 223,

13  252-53 (2011)). Because Congress intended the PREP Act to serve as the exclusive

14  remedy for the alleged use (or non-use) of covered countermeasures in the current

15  pandemic, the Act "wholly displaces a state law cause of action, and in effect, converts

16  or recasts the state law claim into a federal cause of action" under the "complete

17  preemption" doctrine. *See Wright v. Louisiana Corrugated Prods.*, *LLC*, 59 F. Supp.3d

18  767, 775 (W.D. La. 2014). Stated differently, Congress has provided an exclusive remedy

19  for the substance of the allegations and relief sought in the Complaint thereby preempting

20  state law with respect to the claims raised in the Complaint. Moreover, Defendants'

21  administration of countermeasures, such as the use of facemasks and other PPE, and

22  COVID-19 testing, to diagnose, treat, prevent or mitigate the spread of COVID-19

23  (which forms the basis of this action), gives this Court original jurisdiction and

24  completely preempts the state law claims asserted by Plaintiff in the Complaint.

25  Therefore, dismissal is proper due to preemption.

26  / / /

27  / / /

28  / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

20                                          Case No. 2:21-cv-05172-AB-AS

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

## VI.   PLAINTIFF'S ELDER ABUSE CAUSE OF ACTION IS INSUFFICIENT AS A MATTER OF LAW

The Elder Abuse and Dependent Adult Civil Protection Act ("the Elder Abuse Act") is a remedial scheme under which heightened remedies may be sought where it is established that a defendant has engaged in specific types of tortious conduct: i.e., abuse or neglect of an elder or dependent adult. Cal. Welf. & Inst. Code § 15600, *et seq*. A claim for elder abuse requires that the patient or resident was subjected to physical abuse, neglect or deprivation by a care custodian of goods and services that are necessary to avoid physical harm or mental suffering. Cal. Welf. & Inst. Code § 15610.07. Neglect under Cal. Welf. & Inst. Code § 15610.57 is defined as "the negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise." Under the Elder Abuse Act, neglect includes the failure to provide medical care for physical and mental health needs and the failure to protect from health and safety hazards. The California Supreme Court in *Covenant Care, Inc. v. Superior Court*, 32 Cal. 4th 771 (2004)("*Covenant Care*"), explained that "neglect," as used in the Elder Abuse Act, is reserved for the "especially egregious abuse" proven to a "high standard," as opposed to ordinary acts of medical negligence. Even gross negligence committed in the provision of professional services does not rise to the level of egregious conduct intended to be actionable under the Act. *Id*. at 785. The Elder Abuse Act was intended to cover an area distinct and completely separate from medical negligence. *Id*. at 790.

The statute, Cal. Welf. & Inst. Code § 15657, further provides enhanced remedies for elder abuse/neglect, but with very strict requirements "[w]here it is proven by ***clear and convincing evidence*** that a defendant is liable for physical abuse [or] neglect . . . ***and*** that the defendant has been guilty of ***recklessness, oppression, fraud or malice*** in the commission of this abuse, the following shall apply, in addition to all other remedies otherwise provided by law:

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

        (a)     The court shall award to the Plaintiffs reasonable attorney's fees and costs . . .

        (b)     The limitations imposed by Section 377.34 of the Code of Civil Procedure on the damages recoverable shall not apply. [Decedent's pain and suffering.] However, the damages recovered shall not exceed the damages permitted to be recovered pursuant to subdivision (b) of Section 3333.2 of the Civil Code.

Thus, in order to obtain the enhanced remedies available under the Elder Abuse Act, Plaintiff is required to plead *specific* allegations constituting (1) *physical abuse or neglect*, of an elderly adult ***and*** (2) that such abuse or neglect was done with *malice, oppression, fraud, or recklessness*. In other words, Plaintiff must plead conduct that amounts to at least recklessness. Claims for elder abuse, with their heightened remedies, require conduct above and beyond that found in a medical negligence case. Specifically, elder abuse requires clear and convincing evidence of recklessness, oppression, fraud, or malice. See *Delaney v. Baker*, 20 Cal. 4th 23 (1999) ("*Delaney*"); *Mack v. Soung*, 80 Cal. App. 4th 966 (2000).

Unlike a negligence cause of action where notice pleading is sufficient, when pleading a claim for elder abuse, factual allegations cannot be made in conclusory terms. *Covenant Care, Inc. v. Superior Court*, 32 Cal. 4th 771, 790 (2004). The court made it clear that "statutory causes of action must be pleaded with particularity." *Id*. at 790. Plaintiff must plead facts sufficient to establish every element of the cause of action pled, as allegations are nothing more than theories and do not establish any element of any cause of action. *Carter v. Prime Healthcare Paradise Valley, LLC*., 198 Cal. App. 4th 396, 407 (2011). Conclusory language which mirrors the required statutory language is insufficient. *Covenant Care*, *supra*, 32 Cal. 4th at 790.

In *Delaney*, the California Supreme Court reviewed the legislative history behind the Elder Abuse Act and concluded that the purpose and intent of the Act was to protect a uniquely vulnerable and exploitable population from gross mistreatment in the form of abuse and custodial neglect. The court stated that the enactment of the Elder Abuse Act was not to provide additional remedies to elders or dependent adults who find themselves the victims of medical malpractice and wish to overcome the MICRA limitations. *Id*. at

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

34. In particular, a cause of action for elder abuse, requires Plaintiffs to plead facts sufficient to establish that the **defendant recklessly or maliciously engaged in** "**egregious conduct" amounting to a "failure to provide medical care," as opposed to mere medical negligence.** *Id*. at 34-35 [Emphasis added].

"Recklessness, unlike negligence, involves more than 'inadvertence, incompetence, unskillfulness, or a failure to take precautions' but rather rises to the level of a 'conscious choice of a course of action…with knowledge of the serious danger to others involved in it.'" [Citation omitted] *Delaney*, *supra*, 20 Cal. 4th, at 31-32. Moreover, "neglect" as used in the Elder Abuse Act, "covers an area of misconduct distinct from 'professional negligence.' As used in the Act, neglect refers not to the substandard performance of medical services but rather, to the '**failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations**.' [Citations omitted.] Thus, the statutory definition of 'neglect' speaks not of the undertaking of medical services, but of the failure to provide medical care." [Emphasis added.]. *Covenant Care, Inc. v. Superior Court*, 32 Cal. 4th 771, 783 (2004). "**Even gross negligence committed in the provision of professional services does not rise to the level of egregious conduct intended to be actionable under the Act**. *Covenant Care*, *supra*, at 785. [Emphasis added.] Therefore, Plaintiff fails to plead facts to show how Defendants' conduct was reckless.

Moreover, Plaintiff's allegations against Defendants relate to their role as the employers of the administration staff responsible for operation of Parkwest and the staff providing care to Mr. Cortez. Thus, to be entitled to recover any damages or attorney's fees under the Elder Abuse Act, Plaintiffs must allege facts establishing that (1) the Defendant employers had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized; or (2) they ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. Moreover, "[w]ith respect to a

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." *See* Cal. Welf. & Inst. Code § 15657(c) and Cal. Civ. Code § 3294(b).

Here, Plaintiff alleges conclusions that Defendants authorized or ratified the misconduct of the facility and had advance knowledge of the unfitness of the employees who committed the acts and employed them with a knowing disregard of the rights and safety of others. (*See* RFJN–Ex.1, ¶ 39, 49.) Thus, Plaintiff has failed to plead facts, as opposed to conclusions, supporting their Elder Abuse Act claim. Therefore, Plaintiff's cause of action for elder abuse/neglect should be dismissed.

## VII.   PLAINTIFF FAILED TO STATE A CAUSE OF ACTION FOR NEGLIGENCE

To allege a cause of action for negligence, Plaintiff must plead facts establishing that: (1) Defendants were negligent by breaching the applicable standard of care; (2) Plaintiff was injured; and (3) Defendants' negligence caused Plaintiff's injuries. *Bushling v. Fremont Medical Center*, 117 Cal. App. 4th 493, 507 (2004).

First, as detailed herein, Defendants have immunity under the PREP Act as Plaintiff's claims relate to the use of covered countermeasures and/or the management and operation of Parkwest's infection control countermeasures program. Further, while Plaintiff pleads that Parkwest was negligent, Plaintiff fails to plead facts alleging that Mr. Cortez suffered any recoverable damages as a result of Parkwest's alleged negligence. With respect to the damages recoverable in a survival action, Cal. Civ. Code § 377.24, provides, in pertinent part, as follows:

> "In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death . . . and do not include damages for pain, suffering, or disfigurement."

Thus, general damages are not available under the successor claim for Negligence. The only damages available are economic damages incurred by Mr. Cortez prior to his death. There are no such damages specifically alleged in the Complaint. Thus, the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

24

Case No. 2:21-cv-05172-AB-AS
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

Negligence cause of action fails to state a claim upon which relief may be granted and should be dismissed.

## VIII. PLAINTIFF'S CAUSE OF ACTION FOR WRONGFUL DEATH FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

The elements of wrongful death are "(1) a 'wrongful act or neglect' on the part of one or more persons that (2) 'cause[s]' (3) the 'death of [another] person.'" *Nogart v. Upjohn Co.*, 21 Cal. 4th 383, 390 (1999). In support of Plaintiff's cause of action for Wrongful Death, Plaintiff alleges only that Parkwest's violation of various federal and state regulations were a contributing factor to Mr. Cortez's death. (RFJN Ex. 1-Complaint.) Plaintiff fails to set forth how the violations of the vaguely listed regulations caused or contributed to Mr. Cortez' death due to COVID-19. Moreover, the PREP Act provides immunity as to Plaintiff's state law claims, including the cause of action for Wrongful Death.

## IX. PLAINTIFF FAILED TO PLEAD SUFFICIENT FACTS TO SUPPORT CLAIMS FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES

Cal. Civ. Code § 3294 provides, in pertinent part, as follows:

(b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, ***unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct.. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation***." [Emphasis added.]

Here, while Plaintiff's Complaint contains a prayer for punitive damages pursuant to Cal. Civ. Code § 3294 and attorney's fees and costs pursuant to Cal. Welf. & Inst. Code § 15657, Plaintiff failed to plead any facts relating to ratification or advanced knowledge of the unfitness of an employee as required to recover such damages. As such, Plaintiff has failed to plead facts sufficient to support the claims for attorney's fees and punitive damages, and the Complaint should be dismissed.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

25                                                    Case No. 2:21-cv-05172-AB-AS
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

# X.     CONCLUSION

The PREP Act's broad applicability, complete preemption, and immunities are intended to protect Defendants from the exact claims made by Plaintiff in this case. Defendants are immune from suit for all claims for loss caused by, arising out of, relating to, or resulting from their response to the COVID-19 pandemic and their administration of covered countermeasures. To the extent very narrow exceptions to this immunity exist, Plaintiff has failed to meet the pleading requirements, failed to exhaust the requisite pre-litigation administrative remedies, and brought their claims in the improper forum. For these reasons, Plaintiff's claims must be dismissed in their entirety without leave to amend.

DATED:  July 2. 2021                LEWIS BRISBOIS BISGAARD & SMITH LLP

                                    By:  /s/ Rita R. Kanno
                                         Kathleen M. Walker
                                         Lann G. McIntyre
                                         Rita R. Kanno
                                         Attorneys for Defendants
                                         PARKWEST REHABILITATION CENTER LLC and
                                         CRYSTAL SOLORZANO

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

**CERTIFICATE OF SERVICE**
***Lucia Cortez, et al. v. Parkwest Rehabilitation Center, LLC, et al.***
USDC,-CD, Court Case No. 2:21-cv-05172-AB-AS

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 550 West C Street, Suite 1700, San Diego, CA 92101. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On July 2, 2021, I served the following document:

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF LUCIA CORTEZ' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

I served the document on the following persons at the following address (including a fax number and email addresses, if applicable):

| | |
|---|---|
| Scott C. Glovsky<br>Steven Messner<br>Law Offices of Scott Glovsky, APC<br>343 Harvard Avenue<br>Claremont, CA 91711<br>***Attorneys for Plaintiffs*** | Tel: 626.243.5598<br>Fax: 866.243.2243<br>Email: Sglovsky@scottglovskylaw.com<br>Smessner@scottglovskylaw.com |

The document was served by the following means:

☒ **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the document with the Clerk of the Court using the CM/ECF system.

☒ **(BY ELECTRONIC TRANSMISSION ONLY)** Only by emailing the document to the persons at the email addresses listed above based on notice provided on March 16, 2020 that, during the Coronavirus (COVID-19) pandemic, this office will be working remotely, not able to send physical mail as usual, and is therefore using only electronic mail. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 2, 2021          */s/ Kimberly Dammeyer*
                                            Kimberly Dammeyer

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Case No. 2:21-cv-05172-AB-AS
CERTIFICATE OF SERVICE